UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DAMONE WILLIAMS | |
| VERSUS | CIVIL ACTION |
| | 22-CV-858-SDD-RLB |
| DARRYL SANDERS, ET AL. | |

**RULING**

This matter comes before the Court on Defendants' *Motion for Summary Judgment*[1] filed by Defendants Darryl Sanders ("Sanders") and the City of Baton Rouge (collectively, "Defendants"). Plaintiff Damone Williams ("Plaintiff") filed an *Opposition*[2] to this motion, to which Defendants filed a *Reply*.[3] For the reasons set forth below, the *Motion* shall be granted.

**I.    PRELIMINARY ISSUE: LOCAL RULE 56**

This Court's Local Rule 56 requires parties submitting a motion for summary judgment and an opposition thereto to also file statements of material facts.[4] Each fact, denial, and qualification asserted in these statements shall be supported by a record citation.[5] "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."[6] Each assertion of fact "shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion."[7] The

---

[1] Rec. Doc. 41.
[2] Rec. Doc. 44.
[3] Rec. Doc. 49.
[4] M.D. La. Local Rule 56(b)–(c).
[5] *Id.*
[6] M.D. La. Local Rule 56(f).
[7] *Id.*

1

Court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts[,]" and thus "may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."[8]

Here, Defendants' *Statement of Undisputed Material Facts*[9] ("*SUMF*") includes no record citations to support the asserted facts. However, the *Memorandum in Support*[10] of the *Motion* repeats most of the facts set forth in the *SUMF*, and the facts in the *Memorandum in Support* are supported by citations to the record.[11] The Court, therefore, will consider these asserted facts to be properly supported. Additionally, unless otherwise indicated, all facts cited from the *SUMF* are undisputed or improperly disputed and thus, deemed admitted pursuant to Local Rule 56(f).

## II. BACKGROUND

This is an excessive force case. On January 18, 2022, Sanders was a Baton Rouge Fire Department arson investigator with police authority.[12] On that day, he was getting his hair cut at Four Way Barber Shop at 805 Eddie Robinson Sr. Drive in Baton Rouge.[13] Sanders was on duty at all relevant times, and his city-issued Ford F-150 was parked across the street on the east side of Eddie Robinson Sr. Drive, facing north.[14] Barber Calvin Stephen ("Stephen") and customer Gerard Torry ("Torry") were also in the

---

[8] *McGhee v. Fay Servicing, LLC*, 21-652-JWD-SDJ, 2023 WL 2335376, at *2 (M.D. La. Mar. 2, 2023) (quoting M.D. La. Local Rule 56(f)).
[9] Rec. Doc. 41-2.
[10] Rec. Doc. 41-1.
[11] *See e.g.*, Rec. Doc. 41-1, p. 1 (citing Def. Ex. 2, p. 39; Def. Ex. 5, pp. 9–11).
[12] Defendants' *SUMF*, Rec. Doc. 41-2, ¶ 2.
[13] *Id.* at ¶ 2.
[14] Rec. Doc. 44, pp. 2–3; Rec. Doc. 41-1, p. 2.

2

barbershop.[15] Ray Williams ("Williams") entered the barbershop later, around 11:30 a.m.[16]

Around that time, Plaintiff was naked and walking southward on Eddie Robinson Sr. Drive.[17] Plaintiff approached Sanders's truck and struck its driver's side window with a backpack.[18] Plaintiff repeatedly hit the window with the backpack until the window was pushed into the truck.[19] Plaintiff attempted to open the door with the handle and then reached his head and left arm into the opening where the window used to be.[20] Sanders shouted verbal commands to Plaintiff and allegedly identified himself as police.[21] Plaintiff did not comply with Sanders's verbal commands and continued to reach inside the truck.[22]

Sanders knew Plaintiff was within arm's reach of Sanders's loaded assault rifle that was wedged between the truck's driver's seat and center console.[23] The loaded rifle was in plain view[24] and visible through the truck's front windshield.[25] Sanders believed Plaintiff was reaching for the assault rifle to turn and shoot at Sanders and other nearby citizens.[26] Plaintiff continued to reach inside the truck and grabbed at something,[27] so Sanders shot at him and missed.[28] Plaintiff briefly turned toward the sound of the gunshot, but he quickly

---

[15] Rec. Doc. 41-2, ¶ 3.
[16] *Id.*
[17] *Id.* at ¶ 1.
[18] Rec. Doc. 44-1, ¶ 4; Rec. Doc. 44, p. 3; *Video of Shooting*, Rec. Doc. 45-4, at 0:07.
[19] Rec. Doc. 45-4, at 0:07–0:17. The tint on the window held the broken pieces together. Rec. Doc. 45-5, p. 19; Rec. Doc. 45-10, p. 41; Rec. Doc. 45-11, pp. 16–17.
[20] Rec. Doc. 45-4, at 0:18–0:21. Plaintiff contends the *Video* is the best evidence of this event. Rec. Doc. 44-1, ¶ 7.
[21] Rec. Doc. 44-1, ¶ 8. Plaintiff disputes whether Sanders identified himself as police. *Id.*; Rec. Doc. 44, p. 3.
[22] Rec. Doc. 41-2, ¶ 9. Plaintiff disputes what Sanders said, but he does not dispute, or provide record citations supporting a dispute regarding, the facts asserted in this sentence. Rec. Doc. 44-1, ¶ 9. Therefore, these facts are deemed admitted pursuant to M.D. La. Local Rule 56(f).
[23] Rec. Doc. 41-2, ¶ 11.
[24] Rec. Doc. 44-1, ¶ 11.
[25] Rec. Doc. 45-11, pp. 29–31.
[26] Rec. Doc. 41-2, ¶ 12.
[27] Rec. Doc. 45-4, at 0:18–0:21.
[28] *Id.*; Rec. Doc. 41-2, ¶ 13.

turned his attention back to the truck.[29] He pulled the smashed window from the inside of the truck, and he attempted to pull the glass completely off the truck.[30] Sanders allegedly shouted another verbal command before firing a second shot.[31] The second gunshot hit Plaintiff, and he dropped to the ground.[32] Sanders yelled for someone to call 911 and got towels from Stephen so he could render aid to Plaintiff.[33]

As Sanders walked toward Plaintiff to render aid, Plaintiff jumped up from the ground and opened the driver's side door of the truck.[34] Plaintiff allegedly grabbed the assault rifle and attempted to point it at Sanders.[35] Sanders closed the distance between himself and Plaintiff, and he struggled to gain control of the rifle from Plaintiff.[36] During this struggle, Sanders heard the safety device click as Plaintiff tried to manipulate it and pull the trigger.[37] Sanders fought for control of the charging handle on the rifle because Plaintiff could not fire the weapon as long as the handle was held back.[38] Stephen and Torry were outside of the barbershop, approximately twenty feet away from Sanders and Plaintiff, as this scuffle occurred.[39] As he struggled to overcome Plaintiff, Sanders fired his weapon at Plaintiff.[40] Plaintiff fell to the ground with the rifle in his hand.[41] Sanders took the rifle from Plaintiff and placed it on a nearby bench.[42] Sanders then called the

---

[29] Rec. Doc. 45-4, at 0:22–0:24.
[30] *Id.*
[31] Rec. Doc. 41-2, ¶ 15. Plaintiff disputes whether any commands were shouted before the second shot because none are audible in the *Video*. Rec. Doc. 44-1, ¶ 15.
[32] Rec. Doc. 45-4, at 0:24–0:26.
[33] Rec. Doc. 41-2, ¶ 16.
[34] *Id.* at ¶ 17.
[35] *Id.* Plaintiff disputes whether he was grabbing the rifle. Rec. Doc. 44-1, ¶ 17.
[36] Rec. Doc. 41-2, ¶ 18; Rec. Doc. 44, p. 4.
[37] Rec. Doc. 41-2, ¶ 18.
[38] *Id.* at ¶ 19.
[39] *Id.* at ¶ 22.
[40] *Id.* at ¶ 20.
[41] *Id.*
[42] *Id.* at ¶ 21.

police and reported the shooting.[43] A warrant for Plaintiff's arrest was later issued, charging him with Attempted First Degree Murder, Aggravated Burglary, and Obscenity (Felony Grade).[44]

On November 1, 2022, Plaintiff filed suit against Defendants alleging Sanders's use of deadly force violated federal and state law.[45] Specifically, Plaintiff asserted federal excessive force claims and state law claims of aggravated battery and vicarious liability.[46] Defendants filed this *Motion*, claiming Sanders's use of force was objectively reasonable, and he is entitled to qualified immunity for all claims against him.[47] Defendants further assert that in the absence of an underlying tort, the vicarious liability claims against the City of Baton Rouge must also be dismissed.[48]

### III. LAW AND ANALYSIS

#### a. Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[49] This determination is made "in the light most favorable to the opposing party."[50] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the

---

[43] *Id.*; Rec. Doc. 44, p. 4.
[44] Rec. Doc. 41-2, ¶ 26.
[45] Rec. Doc. 1.
[46] *Id.*
[47] Rec. Doc. 41-1.
[48] *Id.*
[49] Fed. R. Civ. P. 56(a).
[50] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

nonmovant's case.'"[51] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[52] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[53]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[54] All reasonable factual inferences are drawn in favor of the nonmoving party.[55] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[56] Conclusory allegations unsupported by specific facts will not prevent the award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any "significant probative evidence tending to support the complaint."[57] Likewise, the "fundamental rules governing summary judgment"[58] prohibit the Court from weighing evidence or making credibility determinations. "By choosing which testimony to credit and which to discard, '[a] court improperly 'weigh[s]

---

[51] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F. Supp. 2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).
[52] *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[53] *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[54] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[55] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[56] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[57] *National Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[58] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015).

the evidence.'"[59]

### b. Section 1983 Claims and Qualified Immunity

To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[60] Plaintiff alleges that Sanders violated his Fourth Amendment right to be free from excessive force. Defendants raise the defense of qualified immunity.

Qualified immunity shields government officials from liability in their performance of discretionary functions unless their conduct violated a clearly established constitutional right.[61] "Once raised, a plaintiff has the burden to rebut the qualified immunity defense 'by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.'"[62]

The qualified immunity defense presents a two-part inquiry: "(1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct."[63] A court may address either part of the two-part inquiry first.[64] "This inquiry focuses not on the general standard—when may an officer use deadly force against a suspect?—but on *the specific circumstances of the incident*—could an officer have

---

[59] *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)).
[60] *See Lefall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994).
[61] *See Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009).
[62] *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (quoting *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997)).
[63] *Ontiveros*, 564 F.3d at 382.
[64] *See Pearson v. Callahan*, 555 U.S. 223 (2009).

reasonably interpreted the law to conclude that the perceived threat posed by the suspect was sufficient to justify deadly force?"[65] Qualified immunity will protect "all but the plainly incompetent or those who knowingly violate the law."[66]

1. Excessive Force

To prevail on an excessive force claim, the plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[67] The reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight."[68] The Court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[69]

The United States Court of Appeals for the Fifth Circuit instructs that the second factor—whether the suspect posed an immediate threat to the safety of the officers—is "the most important."[70] "The '[u]se of deadly force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others.'"[71] When assessing reasonableness, the Court must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a

---

[65] *Ontiveros*, 564 F.3d at 383 n.1 (emphasis added).
[66] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[67] *Malbrough v. Stelly*, 814 F. App'x 798, 802–03 (5th Cir. 2020) (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)).
[68] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[69] *Id.*
[70] *Malbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020).
[71] *Salazar-Limon v. City of Houston*, 826 F.3d 272, 278 (5th Cir. 2016) (brackets in original) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011)).

particular situation."[72] Because Sanders utilized deadly force, the Court's focus in the objective reasonableness balancing test is on the second *Graham* factor: whether the suspect poses an immediate threat to the safety of the officer or others.[73]

Defendants argue they are entitled to summary judgment on the excessive force claim because Sanders's use of deadly force was not clearly excessive or objectively unreasonable.[74] Again, the essential elements of Plaintiff's excessive force claim are: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[75] It is undisputed that Sanders shot Plaintiff; therefore, the injury element is satisfied. Because Sanders used deadly force to "seize" Plaintiff, the relevant Fourth Amendment questions are elements (2) and (3), which Defendants contend are not satisfied because the force used was neither excessive nor unreasonable.

Plaintiff argues a genuine dispute of material fact exists regarding what crime he committed when Sanders utilized lethal force; thus, summary judgment must be denied.[76] Though the parties disagree about which crime appropriately fits Plaintiff's acts, this dispute is not material to the Court's analysis. Rather, the Court's inquiry focuses on whether "an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others."[77] As discussed below, a reasonable officer in Sanders's position would have reason to believe the suspect posed a threat of serious

---

[72] *Graham*, 490 U.S. at 396–97.
[73] *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021); *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018).
[74] Rec. Doc. 41-1, p. 15.
[75] *Malbrough v. Stelly*, 814 F. App'x 798, 802–03 (5th Cir. 2020) (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)).
[76] Rec. Doc. 44, p. 10.
[77] *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021); *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018).

harm, so Sanders's actions do not amount to excessive force.

### 2. The First and Second Shots

Plaintiff has failed to demonstrate a genuine factual dispute in the facts leading up to and including the first and second shots. Plaintiff claims whether Sanders identified himself as law enforcement and what commands he gave are disputed facts.[78] However, Plaintiff offers no evidence to support this. Instead, he offers Sanders's deposition testimony wherein Sanders claims he identified himself as police and gave commands to Plaintiff.[79] Additionally, Plaintiff provided the Court with testimony from three eyewitnesses within earshot during the incident, all of whom testified that Sanders shouted verbal commands to Plaintiff before shooting, which commands Plaintiff ignored.[80] Plaintiff, therefore, has not presented any competent summary judgment evidence to controvert the testimony of Sanders or the eyewitnesses. In the absence of such controverting evidence, the Court cannot assume that Plaintiff "could or would prove the necessary facts" to survive summary judgment.[81]

Plaintiff also contends that it has not been established whether he was aware that the rifle was in the truck when he started hitting the window.[82] Relying on Sanders's deposition testimony, Plaintiff claims he could not have seen the rifle through the driver's side window due to the window tint.[83] However, Plaintiff also asserted that the rifle was in plain view,[84] which assertion is supported by Williams's deposition testimony that the rifle

---

[78] Rec. Doc. 44, p. 13.
[79] Rec. Doc. 44, p. 13; Rec. Doc. 45-2, p. 42.
[80] Rec. Doc. 45-5, pp. 17–18; Rec. Doc. 45-10, pp. 13, 32; Rec. Doc. 45-11, p. 17. Though the testimony is inconsistent regarding what Sanders specifically said, the testimony consistently shows that Sanders gave verbal commands to Plaintiff and that Plaintiff ignored said commands.
[81] *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 (quoting *Little*, 37 F.3d at 1075).
[82] Rec. Doc. 44, p. 11.
[83] Rec. Doc. 44, p. 11.
[84] Rec. Doc. 44-1, ¶ 11.

was visible through the front windshield.[85] Notwithstanding whether Plaintiff knew the rifle was in the truck before he broke the window, his video evidence shows the first shot was not fired until after he completely pushed in the driver's side window and reached his left arm and head into that window.[86]

After the first shot was fired and missed, the video evidence shows Plaintiff briefly turned toward the sound.[87] He then resumed reaching into the truck and pulled the smashed window outside the truck. Sanders then fired the second shot, which struck Plaintiff.

It is undisputed that Sanders knew a loaded AR-15 was between the driver's seat and center console of his city-issued truck when he saw Plaintiff reach into the driver's side window. Deadly force is justified when an officer reasonably believes the individual is reaching for a gun, even if the officer had not yet seen the gun when he fired or when no gun was ever found at the scene.[88] "Officers are not required to 'wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety.'"[89] Thus, a reasonable officer on the scene, who knew a loaded AR-15 was within Plaintiff's reach, could have reasonably believed Plaintiff posed a serious threat of harm to the officer or the nearby citizens.

Sanders's use of deadly force when he fired the first two shots was not clearly excessive or unreasonable; therefore, Sanders did not violate Plaintiff's constitutional rights when he fired those shots. As suck, Sanders is entitled to qualified immunity, and

---

[85] Rec. Doc. 45-11, pp. 29–31.
[86] Rec. Doc. 45-4.
[87] *Id.*
[88] *Cloud v. Stone*, 993 F.3d 379, 387 (5th Cir. 2021).
[89] *Martin v. Petty*, 699 F. Supp. 3d 547, 557 (S.D. Tex. 2023) (quoting *Garcia v. Blevins*, 957 F.3d 596, 602 (5th Cir. 2020)).

11

Plaintiff's claims of excessive force as to the first two shots must be dismissed.

        3.    <u>The Third Shot</u>

Plaintiff also failed to demonstrate an issue of material fact regarding the facts leading up to and including the third and final shot. It is undisputed that after being shot, Plaintiff got off the ground, opened the driver's side door of the truck, and fought with Sanders over control of the rifle.[90] It is also undisputed that during this struggle, Sanders heard Plaintiff attempting to manipulate the rifle's safety and to pull the trigger.[91] Additionally, at least two bystanders were only twenty feet away during the confrontation. While struggling over the rifle with Plaintiff, Sanders fired his weapon at Plaintiff. The shot struck Plaintiff, and he fell to the ground with the rifle in hand.[92]

Plaintiff claims "there is significant disagreement between various eyewitnesses" whether Plaintiff ever possessed the rifle.[93] He acknowledges that Sanders, Stephen, and Torry all testified that Plaintiff grabbed the rifle and then fought over it with Sanders.[94] However, Plaintiff the testimony of Frederick Simonson ("Simonson") and Williams's police statement as evidence of a factual dispute on this issue.[95] But this evidence is unavailing. Simonson testified that the truck door was open and blocking his view of the incident, so he was not in a position to observe if there was anything in Plaintiff's hands.[96]

The Court also viewed the video of Williams's statement to the Baton Rouge Police Department wherein Williams stated that Plaintiff did not "get his hand on the rifle, I don't

---

[90] Rec. Doc. 41-2, ¶¶ 17–18; Rec. Doc. 44, p. 4.
[91] Rec. Doc. 41-2, ¶ 18.
[92] *Id.* at ¶ 20.
[93] Rec. Doc. 44, p. 17.
[94] *Id.* at pp. 17–18.
[95] *Id.* at p. 18.
[96] Rec. Doc. 45-12, pp. 10, 13.

12

think–," after which the officer began asking him another question.[97] In his subsequent deposition, Williams clarified that after Plaintiff got off the ground following the second shot, Williams went to the back of the barbershop, so he did not see anything that happened after that, including when Plaintiff opened the truck door or when Sanders fired the third shot.[98] Because neither Williams nor Simonson were in a position to see whether Plaintiff had the rifle in his hand before the third shot, their testimony/statement does not controvert Defendants' evidence such that it creates a genuine dispute of material fact.

Furthermore, Plaintiff's *Response to Statement of Material Facts*[99] and his own factual narrative[100] suggest that he agrees that he possessed the rifle. First, Plaintiff did not dispute Defendants' claim that Sanders took the rifle from Plaintiff.[101] Second, Plaintiff specifically stated, "Plaintiff Williams fell to the ground and Defendant Sanders was able to take the rifle out of his hands."[102] Because Plaintiff acknowledges that he possessed the rifle, and he has provided no summary judgment evidence to the contrary, his possession of the rifle is undisputed.

Plaintiff shifts arguments and claims the third shot was excessive and unreasonable because, at the time of the third shot, Sanders was the aggressor based upon the previous two shots. Plaintiff also argues Sanders brought the struggle on himself by having the rifle in his truck in violation of police department procedure.[103] This argument relies on Louisiana's aggressor doctrine statute.[104] Plaintiff's reliance on this

---

[97] Rec. Doc. 45-15, 5:21–5:24.
[98] Rec. Doc. 45-11, pp. 13–15, 17–18.
[99] Rec. Doc. 44-1.
[100] Rec. Doc. 44, pp. 2–4.
[101] Rec. Doc. 44-1, ¶ 21.
[102] Rec. Doc. 44, p. 4.
[103] *Id.* at pp. 17–21.
[104] *Id.* at p. 18 (quoting La. Rev. Stat. 14:21).

state-law aggressor doctrine is misplaced.[105] First, Plaintiff's argument that Sanders was the aggressor is based on an assumption that the first two shots were unreasonable, but as discussed above, those shots were reasonable under the circumstances. Second, § 1983 liability "cannot be premised on the fact that an officer 'creates the need' to use excessive force by failing to follow police procedure."[106] Thus, the argument that Sanders brought the difficulty on himself by failing to follow department-wide firearm storage procedures also fails.

Sanders fired the third shot while he and Plaintiff were struggling for control over Sanders's loaded AR-15, with bystanders only twenty feet away. Sanders only fired after Plaintiff continued attempting to turn off the safety and fire the rifle. A reasonable officer on the scene in those circumstances could have reasonably believed Plaintiff posed a serious threat of harm to the officer and the nearby citizens.

Accordingly, the competent summary judgment evidence establishes that Sanders's use of deadly force when he fired the third shot was not clearly excessive or unreasonable and thus not a violation of Plaintiff's constitutional rights. The Court finds that Sanders is entitled to qualified immunity and summary judgment on Plaintiff's claim of excessive force as to the third shot.

c. **State Law Claims**

Plaintiff has asserted state law claims of aggravated battery and vicarious liability against Sanders and the City of Baton Rouge, respectively.[107] In Louisiana, corrections

---

[105] The Court notes that the Louisiana Supreme Court has found that the aggressor doctrine "no longer has a place in Louisiana tort law." *Landry v. Bellanger*, 2002-1443 (La. 5/20/03), 851 So. 2d 943, 953.
[106] *Malbrough v. City of Rayne*, 10-107, 2019 WL 1120064, at *6 (W.D. La. Mar. 11, 2019) (quoting *Hover v. Brenner*, 229 F.3d 1147 (5th Cir. 2000)).
[107] Rec. Doc. 1, ¶¶ 16–18.

14

officers cannot be held liable for use of force, unless that force is excessive.[108] "Under Louisiana law, the same standard is used in analyzing a state law claim of excessive force as a federal constitutional claim—reasonableness under the circumstances."[109] Additionally, Louisiana's state law qualified immunity is "[i]dentical to the federal standard."[110] Accordingly, summary judgment in favor of Defendants on the state law claims is granted for the same reasoning and analysis discussed above. Because Plaintiff claims against Sanders cannot be sustained, it follows that his claim of vicarious liability against the City of Baton Rouge also fails.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that there are no genuine issues of material fact that preclude summary judgment, and Defendants' *Motion for Summary Judgment*[111] is **GRANTED**. Plaintiff's claims are dismissed with prejudice.

*Judgment* shall be entered accordingly.

The upcoming jury trial and all related deadlines are hereby canceled.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on this 26 day, February 2026.

SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[108] *Fontenot v. Gusman*, No. 11-1772, 2012 WL 5196426, at *17 (E.D. La. Oct. 18, 2012)
[109] *Escort v. Miles*, No. 6:17-CV-00484, 2018 WL 3580656, at *8 (W.D. La. July 25, 2018).
[110] *Id. See also, Perrilloux v. City of Kenner*, No. 08-4287, 2009 WL 10680057, at *3 (E.D. La. Oct. 9, 2009).
[111] Rec. Doc. 41.